**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**


BOBBY WILCHER                                                                    PETITIONER

V.                                                          CIVIL ACTION NO. 3:98-cv-236WS

CHRISTOPHER B. EPPS, COMMISSIONER,
MISSISSIPPI DEPARTMENT OF CORRECTIONS                         RESPONDENT


**<u>ORDER DENYING MOTION TO REINSTATE STAY</u>**

Before this court is a motion submitted by Cliff Johnson, counsel for Bobby

Wilcher, asking this court to reinstate a stay of execution previously entered in this

case, but recently withdrawn by the Order of this court at Bobby Wilcher's request on

June 14, 2006.  The motion before the court is extraordinary in that Bobby Wilcher,

the death row inmate who is the subject of the motion, did not authorize its filing nor

join in its request for a stay.  Having proclaimed that he is completely "at peace,"

Bobby Wilcher stated on June 8, 2006, in open court that he wished to dismiss the

habeas corpus petition now pending before this court and to have the State of

Mississippi proceed immediately with his execution.  In spite of Wilcher's request, his

attorney J. Cliff Johnson, II, has submitted his motion seeking a stay of the execution

that Wilcher now requests.

The respondents represented by the Office of the Attorney General for the

State of Mississippi, specifically Marvin L. White, Jr., Assistant Attorney General,

oppose the request for a stay of execution.  In the Response to Motion to Reinstate

Stay of Execution, the respondents ground their opposition upon the following:  that

Wilcher has clearly declared that he wishes to abandon all appeals which would frustrate or delay the State of Mississippi from conducting his execution;  that Wilcher was mentally competent to make this decision;  that Attorney Johnson's absence from the June 8, 2006, hearing had no bearing on the proceedings;  and that Attorney Johnson has no standing as a "next friend" to request a stay of execution, which request is at odds with the desires of Bobby Wilcher.  Each of these objections will be considered below.

### The June 8, 2006, Hearing

Prior to the June 8, 2006, hearing, Wilcher had written to the court stating that he wished to dismiss his appeal of the death sentences he had received from the Circuit Court in Rankin County, Mississippi, on June 23, 1994, after a change of venue for the capital murder of Velma Odell Noblin.  Wilcher also was sentenced to death on July 21, 1994, in Harrison County, Mississippi, for the capital murder of Katie Belle Moore.  Both sentences were affirmed by the Mississippi Supreme Court.

Upon receiving Wilcher's letter, this court then scheduled a hearing at which Wilcher's attorneys, Carlton Reeves and Tom Royals, appeared.  Wilcher was also present.  The State of Mississippi was represented by Marvin L. White, Jr.

Noticing the absence of Attorney J. Cliff Johnson, II, this court inquired of Wilcher whether Wilcher desired Johnson's presence.  Wilcher stated that he did not desire Johnson's presence and would proceed with the presence of Attorney Reeves who is in the same law firm with Johnson.

Thereafter, the court examined Wilcher on his desires and state of mind. Wilcher announced that he is completely at peace and ready to die.  He asked the

2

court to dismiss his appeals before the court and to allow the State of Mississippi to set an immediate execution date.

The court then allowed Wilcher to confer with his attorneys.  First, he met with Attorney Reeves and then when Attorney Royals arrived shortly thereafter, with Attorney Royals.  The court did not rush this conference, nor set any time limitations. The court merely advised them to notify the court when their conference had ended.

After the conference, Wilcher stood again at the podium before the court and reasserted his wish to be executed immediately.  He acknowledged the disagreement of counsel and their fervid attempts to persuade him to change his mind. Nevertheless, he stated he was totally committed to his earlier-enunciated wish.

The court closely studied Wilcher's demeanor, actions and reactions and listened attentively to whether his statements betrayed any nuances, hesitations or reluctance at odds with his declarations.  The court heard nothing such.

The court subjected Wilcher to a number of questions designed to inform this court whether Wilcher understood the grave consequences of his decision and whether Wilcher was suffering any mental defect.  Wilcher responded as follows. Wilcher stated that he was ready to die.  He understood that abandoning these appeals could lead to immediate execution.  He understood that execution would be by lethal injection.  He stated that he had no real confidence in his appeals and characterized the appeals as "begging" appeals, a term, he says, used on death row to describe an appeal without any true substance, but which simply hopes to delay the execution.  Wilcher emphatically stated that he should be the one to determine his fate, that it was his life and that he should be the ultimate decision-maker.  He denied

3

that he was suffering from any mental problems or defects.  He informed the court that

he was aware that his attorneys would try to frustrate his request for execution.  He

said he had allowed them to make their arguments against his wish for death, but he

had rejected their arguments and, quite frankly, did not need to speak with them

again.  When Attorney Royals asked if he and the other attorneys could be excused

from further representation, Wilcher, somewhat amused, said no.  He explained.

Wilcher said that he did not want to excuse his attorneys because he did not believe

he could be put to death without having an attorney.  If the present group of attorneys

were excused, said Wilcher, the State may have to appoint new attorneys who would

seek a delay in the execution to become familiar with the case.  Wilcher said he

wanted no further delays and therefore did not want to excuse his present attorneys,

although he was not interested in any further dialogue on his announced intention to

die.  When the court asked Attorney White to provide a time frame for the execution

and when Attorney White stated that he would seek an execution date within the next

thirty days, Wilcher was pleased and said "there you go!"

### Competency

Wilcher's counsel has raised the question of Wilcher's competency to waive

further litigation of his case, citing the United States Supreme Court's Order in *Rees v.*

*Peyton*, 384 U.S. at 312, 86 S.Ct. at 1505, 1506, 16 L.Ed.2d 583 (1966).  In *Rees,* a

state criminal defendant under a death sentence filed a petition for *certiorari* to review

a court of appeals decision affirming the denial of habeas corpus relief.  Before the

United States Supreme Court could act upon the *certiorari* petition, the defendant

withdrew the petition and decided to "forego any further legal proceedings."  In "aid of

the proper exercise of [its] *certiorari* jurisdiction," the United States Supreme Court

directed the federal district court to "make a *judicial determination* as to Rees' mental

competence," that is, "whether he had the capacity to appreciate his position and

make a rational choice with respect to continuing or abandoning further litigation or, on

the other hand, whether he is suffering from a mental disease, disorder, or defect

which may substantially affect his capacity in the premises."  *See Streetman v.*

*Lynaugh*, 835 F.2d 1521, 1525 (5th Cir. 1988).[1]  The *Rees* Order remanding the

matter to the federal district court now is recognized as having established the federal

standard in circumstances where a petitioner seeks to abandon further appeal.  The

standard is that the petitioner will be found competent unless he lacks sufficient

capacity to appreciate his position and make a rational choice with respect to

continuing or abandoning further litigation.  *Rees*, 86 S.Ct. at 1506.

Having already considered the psychological evidence and testimony presented

both for and against Wilcher in prior proceedings, and proceeding in accordance with

*Rees*, this court extensively questioned Wilcher regarding his motion to forego all

further appeals.  After examining Wilcher and discussing with him the import of what

he was requesting, this court made a judicial determination that he was competent to

---

[1]The United States Supreme Court carried the *Rees* case on its docket following remand to the district court, *see Rees v. Peyton*, 386 U.S. 989, 87 S.Ct. 1310, 18 L.Ed.2d 333 (1967), and only denied the *certiorari* petition following Rees's death by natural causes in 1995.  *See Rees v. Superintendent of Virginia State Penitentiary*, 516 U.S. 802, 116 S.Ct. 271, 133 L.Ed.2d 10 (1995); *see also Smith v. Armontrout*, 812 F.2d 1050, 1056 n. 7 (1987); *Rumbaugh v. Procunier*, 753 F.2d 395, 398 n. 1 (5th Cir. 1985). Rees was held at the Federal Medical Center in Springfield, Missouri, following remand, until his death.  *See* Stuart Minor Benjamin, *Stepping into the Same River Twice: Rapidly Changing Facts and the Appellate Process*, 78 Tex. L.R. 269, 330 n. 217 (1999).

5

waive his appeals, that Wilcher possessed the capacity to appreciate his position in this case, and that he was capable of making a rational choice with respect to continuing or abandoning further litigation of this case.  Finally, this court found from its inquiry that Wilcher was not suffering from a mental disease, disorder, or defect which might affect substantially his capacity to make the decision to waive further litigation of this case.  So, after considering the arguments of counsel and the extensive discussion with Wilcher, this court concluded that Wilcher was competent under the standard set forth in *Rees*.

In *Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), the United States Supreme Court observed that although it had used the phrase "rational choice" in *Rees* to describe the competence necessary to withdraw a *certiorari* petition, it had not indicated that phrase meant "something different from 'rational understanding' " as used in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).  *Godinez*, 509 U.S. at 398 n. 9, 113 S.Ct. 2680. Since the Supreme Court's determination in *Rees*, courts have applied its direction to evaluate a capital inmate's competency to waive review, finding that condemned inmates who are mentally competent may nevertheless rationally decide to waive legal review of their sentences.  *Gilmore v. Utah*, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976).

In *Smith v. Armontrout*, 812 F.2d 1050, 1056 (8th Cir.1987), the Eighth Circuit rejected the contention that *Rees* barred waiver of post-conviction review in capital cases based on the mere possibility that the inmate's decision was the product of a

mental disease, disorder or defect, citing *Rumbaugh v. Procunier*, 753 F.2d 395,

398-99 (5th Cir. 1985), *cert. denied*, 473 U.S. 919, 105 S.Ct. 3544, 87 L.Ed.2d 668

(1985),[2] and *Hays v. Murphy*, 663 F.2d 1004 (10th Cir. 1981).  The Eighth Circuit

determined that a literal interpretation of the portion of the *Rees* standard asking

whether an inmate suffered from " 'a mental disease, disorder, or defect which may

substantially affect his capacity,' would conflict with a similarly literal interpretation of

the other half of the test, which asks whether the prisoner has, rather than absolutely,

certainly, or undoubtedly has, the capacity to appreciate his position and make a

rational choice."  *Smith*, 812 F.2d at 1057.  The Eighth Circuit also noted that "though

*Rees* recites these two portions of the standard as disjunctive alternatives, there is

necessarily an area of overlap between the category of cases in which at the threshold

we see a possibility that a decision is substantially affected by a mental disorder,

disease, or defect, and that of cases in which, after proceeding further, we conclude

that the decision is in fact the product of a rational thought process."  *Id.*

---

[2]In *Rumbaugh v. Procunier,* the Fifth Circuit set forth an elaboration of the *Rees* test to be conducted by a district court.  This test requires obtaining the answer to at least one and perhaps three questions:

(1) Is the person suffering from a mental disease or defect?  (2) If the person is suffering from a mental disease or defect, does that disease or defect prevent him from understanding his legal position and the options available to him?  (3) If the person is suffering from a mental disease or defect which does not prevent him from understanding his legal position and the options available to him, does that disease or defect, nevertheless, prevent him from making a rational choice among his options?

If the answer to question (1) is no, the court need go no further, the person is competent. If both the first and second questions are answered in the affirmative, the person is incompetent and the third question need not be addressed. If the first question is answered yes and the second is answered no, the third question is determinative; if yes, the person is incompetent, if no, the person is competent.

*See Streetman v. Lynaugh*, 835 F.2d 1521, 1525 (5th Cir. 1988).

Furthermore, the Eighth Circuit found very probable, "given the circumstances that per force accompany a sentence of death, that in every case where a death-row inmate elects to abandon further legal proceedings, there will be a possibility that the decision is the product of a mental disease, disorder, or defect.  Yet, *Rees* clearly contemplates that competent waivers are possible, *see also Gilmore v. Utah*, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976)."[3]  *Id.*

This court has given consideration to the arguments of counsel for the petitioner regarding the October 15, 2001, affidavit of Mark D. Cunningham, Ph.D., the psychologist who reviewed the petitioner's psychological evidence, noting the findings of Dr. Carlton Stanley that the petitioner had "suicidal ideation" and "severe depression."  This court notes that Dr. Carlton Stanley testified at trial that the petitioner was "a psychopath who was not under the influence of any mental or emotional disturbance" at the time of the murders in question.  Dr. Cunningham, who never examined Wilcher, prepared the affidavit at issue, dated October 15, 2001, for trial proceedings contemplated at this earlier time.  Dr. Cunningham's affidavit does not address Wilcher's competence to waive his appeals;  the affidavit does not address Wilcher's competency at all.

Nor is this court impressed with Johnson's argument that somehow the conditions on death row in the State Penitentiary at Parchman, Mississippi, have caused or exacerbated a mental disease, disorder or defect which substantially

---

[3]The Eighth Circuit in *Smith* noted that the district court "examined the rationality of the values and beliefs underlying Smith's decision, including his aversion [to] confinement, and his conclusion that ··· he [would] be unable to avoid a life sentence" and affirmed the district court's conclusion that Smith's decision to forego further legal review was competent.  *Id.*, at 1058-59.

affected Wilcher's capacity to decide whether to abandon his appeals.  This court finds Johnson's reliance on *Gates v. Cook*, 376 F.3d 323, 342-43 (5th Cir. 2004), to be misplaced.  This court is not persuaded that any conditions on death row, including those relating to mental and general health, substantially affected Wilcher's capacity to appreciate the consequences of his action, or substantially affected his mental processes in arriving at his decision.

In sum, this court finds that Wilcher wishes to die.  This court further finds that Wilcher is mentally and physically competent to make this decision.  Accordingly, this court, as Wilcher, rejects all of Johnson's challenges to the mental capacity of his client.

## Johnson's Absence From The Hearing Of June 8, 2006

Attorney Johnson says he had no notice of the June 8, 2006, hearing.  He says he had been working out of the country since August, 2005, and that he did not receive sufficient notice of the hearing.  The parties dispute whether Attorney Johnson had registered with the court to receive electronic notice by e-mail as he was required to do.

Johnson's notice argument has no merit.  First of all, Johnson's co-counsel, Carlton Reeves, was present at the hearing.  Attorney Reeves extensively discussed Wilcher's desires with Wilcher and argued against same.  Further, this court queried Wilcher on Johnson's absence and Wilcher clearly stated that he had no need for Johnson's presence and waived such.

## Johnson As Next Friend

The State of Mississippi contends that Wilcher's attorney has no standing to act as next friend for Wilcher in this matter.  If Wilcher "has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation," then he is competent to waive collateral federal review, and next-friend petitioners do not have standing to petition on his behalf.  *Rees*, at 314, 86 S.Ct. at 1506.  On the other hand, if Wilcher "... is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises," then he is incompetent, and the federal courts have jurisdiction to entertain next-friend petitions.  *Id*.

This court has concluded from its inquiry that Wilcher was not suffering from a mental disease, disorder, or defect which might affect substantially his capacity to make the decision to waive further litigation of this case.  Thus, Attorney Johnson in the instant case has no standing to proceed on Wilcher's behalf.  In *Whitmore v. Arkansas*, 495 U.S. 149, 165, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), the United States Supreme Court held that "next friend" standing is not available if an evidentiary hearing shows that the defendant has given a knowing, intelligent and voluntary waiver of his right to proceed, and his access to court is otherwise unimpeded.

## Conclusion

Wilcher has asked the court to dismiss all of his appeals.  He understands the dire consequences of this request.  He recognizes that the State of Mississippi will seek to execute him as soon as possible.  He is not suffering from any mental disease, disorder or defect.  He says he simply is at peace with his decision and

10

wishes to die.  He has reminded his attorneys that he, not they, should be the ultimate decision-maker as to these matters and that while he understands their zeal to continue to fight, he is committed to a decision that he has reached after much reflection.  This court agrees with Wilcher that this call is his to make.

Therefore, this court denies Johnson's motion asking this court to reinstate a stay of execution [docket # 56-1].  This court finds that no meritorious arguments for said stay have been presented.

**SO ORDERED**, this the 23rd day of June, 2006.

s/ HENRY T. WINGATE

CHIEF UNITED STATES DISTRICT JUDGE

Civil Action No. 3:98-cv-236WS

Order