**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

BOBBY WILCHER                                                                              PETITIONER

V.                                                                    CIVIL ACTION NO. 3:98-CV-236WS

CHRISTOPHER B. EPPS, COMMISSIONER,
MISSISSIPPI DEPARTMENT OF CORRECTIONS                                RESPONDENT


**MEMORANDUM OPINION**[1]

Before this court is Bobby Wilcher's "Emergency Motion To Reinstate Petition For Writ Of Habeas Corpus, To Withdraw Petitioner's Pro Se Motion, And To Reinstate Stay Of Execution." Bobby Wilcher, petitioner, is a death-row inmate at the Mississippi State Penitentiary at Parchman, Mississippi, who is scheduled to be executed by lethal injection a few days from now, on October 18, 2006, at 6:00 o'clock p.m.

Wilcher, through his attorney, Cliff Johnson, filed this motion on October 5, 2006. The State of Mississippi, represented by Marvin L. White, Jr., promptly filed a response in opposition thereto. On Friday, October 13, 2006, at approximately 11:30 o'clock a.m., this court gathered the parties, including Wilcher, and heard oral

---

[1] This court, after having heard oral arguments on Friday, October 13, 2006, delivered this opinion from the bench on Saturday, October 14, 2006, at approximately 9:00 o'clock a.m. The court reserved the right to modify that bench opinion with additional cites and observations.

argument.  The court also heard from one witness, Leonard Vincent, in-house attorney for the Mississippi Department of Corrections, called by the State of Mississippi.[2]

Wilcher resides on death-row because two separate juries convicted him of the capital murders of Velma Odell Noblin and Katie Belle Moore.  The killings occurred on the night of March 5, 1982.  Since his 1982 trials, Wilcher has pursued various appeals before the state and federal courts, appeals which have attacked virtually every aspect of the two trial proceedings which resulted in two separate juries imposing the death penalty.

On June 8, 2006, this court addressed Wilcher's motion asking this court to allow him to abandon all further appeals and to submit himself for immediate execution.  At the time, Wilcher still had pending before this court his Petition For Habeas Corpus[3] by which he raises a challenge to the propriety of the trial judge's presiding over the trials, challenge to the competency of his defense attorneys, and challenge to the prosecutor's conduct at trial.  He also in that Petition For Habeas Corpus attacks the conduct of the jury.

---

[2]The defense had no objection to this witness' testimony, so long as said testimony did not recite any statements or utterances made by Wilcher to either the testifying witness, or to the Warden of the Penitentiary after the execution had been postponed by Order of the United States Supreme Court.  The State of Mississippi wished to show that notwithstanding Wilcher's affidavit of July 7, 2006, wherein Wilcher purportedly claimed he wanted to live, after the postponement Wilcher was upset that the execution had not proceeded.  The court did not allow the witness to repeat any statements made by Wilcher, but did allow the witness to testify as to Wilcher's demeanor.

[3]Prior to the hearing on Wilcher's request to abandon his appeals, this court had completed its analysis of all Wilcher's various claims in a lengthy Memorandum Opinion.  The court concludes in that Memorandum Opinion that all of Wilcher's attacks lack merit.  Because of Wilcher's decision to abandon the appeal, this court did not publish that Memorandum Opinion, but stands ready to do so immediately, if called upon.

As earlier stated, notwithstanding this outstanding Petition for Habeas Corpus, Wilcher, in open court, on June 8, 2006, advised this court that he did not desire to prosecute his appeal any further.  Thereafter, this court conducted a thorough inquiry relative to Wilcher's state of mind, motivation and understanding of his predicament. The court also probed whether Wilcher's surprising request was the result of any force, coercion or threat.

Pursuant to the guideposts set out in *Rees v. Peyton*, 384 U.S. 312, 313, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), *Gilmore v. Utah*, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976);  *Smith v. Armontrout*, 812 F.2d 1050, 1056 (8th Cir. 1987), *Rumbaugh v. Procunier*, 753 F.2d 395, 398-99 (5th Cir. 1985), and *Hays v. Murphy*, 663 F.2d 1004 (10th Cir. 1981)  this court found that Wilcher's request was freely-made and the product of a sane, competent mind.  Wilcher celebrated when the court agreed with him that his, not his attorney's, decision controlled whether he could take this drastic act and move to submit himself to the fate two juries had found he deserved.

Now, Wilcher says he has changed his mind.  Now, he says he wants to live. Now, he says he wants to further his appeals.  Seated in court throughout these proceedings of October 13, 2006, Wilcher did not himself address the court as he had done on June 8, 2006, but allowed Mr. Johnson to offer his argument.  At the hearing held on June 8, 2006, Wilcher had stated that he wanted some distance between him and his attorneys because he did not want them trying to talk him out of his decision to abandon.  Showing a mature understanding of the appellate process, Wilcher stated

3

to the court that he did not want them excused from further representing him because the State would not allow him to die without any representation, that the court would later have to appoint new attorneys, who then would ask that the execution be postponed so that new counsel could become familiar with the record.

Wilcher's defense counsel points to the extraordinary circumstances of this matter, in the balance the possible execution of his client. His entreaty, in this regard, was unnecessary. This court certainly recognizes the gravity of this matter, the potential finality this decision could occasion.

Wilcher surely appreciated these circumstances also. By now, Wilcher would understand the consequences of requested meetings and open statements. At trial, the State's proof was that Wilcher had requested to meet with the Sheriff, and at that meeting had confessed to the murders. At trial, the State's proof had been that Wilcher had invited a journalist to interview him, and during that interview had signed releases and confessed to the crimes. Supposedly, Wilcher stated to this journalist that when he was killing the women, "It felt good." At Wilcher's trial, witnesses testifying to Wilcher's detriment repeated what Wilcher allegedly had said. So, by now Wilcher surely appreciates the possible consequence which may result from a criminal defendant's volunteered comments on his criminal charges.

Now, Wilcher wants to retract his earlier-granted abandonment of appeals. At the time he did so, he says, he was in the grip of hopelessness, frustration and at a low point in his life. He offers nothing else.

When he decided to renounce his position on abandonment and to embrace a thirst for life is unclear to this court. Although his affidavit of July 7 purportedly seeks

4

to reinstate his habeas petition, his conduct thereafter, at the time of the originally scheduled execution on July 11, 2006, may suggest otherwise. This dispute, however, does not affect this court's legal analysis of this matter.

His lawyer argues that he should be able to renounce that request, owing to the above factors and the sainted purpose of the Great Writ. Wilcher's attorney makes the following arguments in support of Wilcher's motion: that he previously was discouraged and believed his appeals to be a waste of time; that Wilcher now realizes that he made a drastic decision due his feelings of frustration and hopelessness; that Wilcher is entitled to the protections of the Great Writ; because Rule 60(b)(6)[4] compels this court to grant the relief requested; and because the death penalty is final, thereby requiring every review.

In opposition, the government argues that: Wilcher's request is tantamount to a successive petition and that Rule 60(b)(6) is being used merely to submit new claims which would not otherwise be permitted; if not a successive petition, the government argues that relief under Rule 60(b)(6) requires a showing of extraordinary

---

[4]Rule 60(b) provides in relevant part that, "on motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or *(6) any other reason justifying relief from the operation of the judgment.* The United States Court of Appeals for the Fifth Circuit holds that, "relief under 60(b)(6) is mutually exclusive from relief available under sections (1)-(5)." *Transit Cas. Co. v. Sec. Trust Co.*, 441 F.2d 788, 792 (5th Cir. 1971). The reason for relief set forth under 60(b)(6) cannot be the reason for relief sought under another subsection of 60(b). *Hess v. Cockrell*, 281 F.3d 212, 215 (5th Cir. 2002).

circumstances not presented here, and that Wilcher is seeking relief not from some imposition of this court, but because of his own voluntary actions.

This court must consider all of this, and other factors as well, namely: the integrity and wholesomeness of the criminal justice procedural system; that Wilcher's guilt is firmly established by the evidence; that this court adjudicated Wilcher mentally competent when he made his abandonment request; that he submits not a valid medical or psychological or coercive excuse, but simply a statement that he felt hopelessness, frustration and was at a low point in his life.

Since that alleged low point in his life, proceedings concerning his request have been held in the Fifth Circuit Court of Appeals[5] and in the United States Supreme Court.[6] Seemingly, this could happen again. Wilcher again could demand to die. His attorney must fight that demand[7] and the courts, again, would have to postpone the execution to await the outcome of this dispute.

This court has not heard a *moving*, valid reason why the court should excuse Wilcher from his abandonment request. The courts cannot be held hostage to the whim, the vacillation of a death-row inmate who, while entirely mentally competent, chooses to abandon his appeals, and later changes his mind, without any showing of sufficient excuse for the earlier action. To hold otherwise, the courts would create a special category for death-row inmates who wish to abandon judicially – approved

---

[5]*See Wilcher v. Anderson*, 2006 WL 1888895 (5th Cir. Miss. July 10, 2006).

[6]*See Wilcher v. Epps*, 2006 WL 1909696 (U.S. Sup. Ct. Oct. 2, 2006)(No. 06-5147).

[7]Wilcher's attorney, Cliff Johnson, at one point stated that the Canons require him to fight continuously for his client's life, even over his client's clearly-expressed wishes.

abandonment of claims and defenses.  To so hold, the courts would allow death-row inmates to play "fast and loose" with the courts.  To so hold, the courts would permit death-row inmates to lengthen the appeal process, delay this execution and to frustrate justice.  To so hold, the courts would open a window for death-row inmates to again and again force the courts to consider and reconsider issues of competency, no matter that such issues would have been addressed earlier.

The Fifth Circuit had before it, as did the United States Supreme Court, Wilcher's statement of July 7, wherein he stated he had changed his mind.  Those courts seemingly were unimpressed with the statement.

This court thus concludes:  Wilcher earlier abandoned his appeals.  He was mentally competent to do so.  He has submitted no persuasive reasons why he should be excused from that abandonment which he made freely, without reservation and with a clear, full understanding of the expected and desired result.

Wilcher contends that under Rule 60(b)(6) of the Federal Rules of Civil Procedure, this court must grant relief from the operation of this court's judgment allowing him to waive his appeals and proceed to be executed.  Otherwise, says Wilcher, this court would be required to adopt a rule that first-time decisions to waive appeals are irrevocable.

Under Rule 60(b)(6), a court may grant relief for "any other reason justifying relief from the operation of the judgment."  Rule 60(b)(6) has been referred to as, "a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses.  The broad language of clause (6) gives the courts ample power to vacate judgments whenever such action is appropriate to

accomplish justice ." *Hesling v. CSX Transportation, Inc.,* 396 F.3d 632, 642-43 (5th Cir. 2005);  *Harrell v. DCS Equipment Leasing Corporation*, 951 F.2d 1453, 1458 (5th Cir. 1992).  However, "[r]elief under this section is granted 'only if extraordinary circumstances are present.' " *American Totalisator Company, Inc. v. Fair Grounds Corporation*, 3 F.3d 810, 815 (5th Cir. 1993).

The *Hesling* Court noted that extraordinary circumstances were present where the district court judge violated a statute requiring him to disqualify himself from proceedings when his impartiality might be questioned, *Liljeberg v. Health Services Acquisition Corporation*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); where a petitioner had default judgment entered against him canceling his citizenship without evidence, a hearing, or counsel, and then holding him in jail with no reasonable opportunity for him to defend his right to citizenship, *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949); and where "plaintiffs' failure, in violation of Rule 55, to notify defendant of their default motion" provided sufficient reason for the defendant's failure to respond.  *Turner v. Salvatierra*, 580 F.2d 199, 201 (5th Cir. 1978).

The State of Mississippi responds that Wilcher is not now entitled to seek the relief he requests under Rule 60(b)(6) because his current circumstances were brought about by his own decision to dismiss his appeals, that is, by his own voluntary action.  The State of Mississippi cites *Lonchar v. Thomas*, 517 U.S. 314, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996), a case upon which Wilcher, too, relies.  Wilcher touts the case's language discussing dismissal of a first federal habeas petition.  The State

of Mississippi argues that this language, "[d]ismissal of a first federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty," is being applied to a circumstance where the State of Georgia dismissed a defendant's last minute petition to stay his execution, *Lonchar,* 116 S.Ct., at 1299, and does not involve a circumstance, such as here, where a defendant has successfully moved on his own to dismiss his appeals and proceed to execution.

This court finds nothing in the language of Rule 60(b)(6) which would require a district court which has dismissed a defendant's petition for habeas corpus relief based on the petitioner's own motion, to reinstate the petition when the defendant simply has changed his mind.  Wilcher presents no authority which says that failure to reinstate his habeas corpus petition and stay of execution would establish a rule that such waivers were irrevocable.  Certainly, in this court's view, the circumstances of each case must dictate the application of Rule 60(b)(6).

Relief under Rule 60(b)(6) is extraordinary, and a movant bears the burden of demonstrating such exceptional circumstances as may warrant relief.  *Heirs of H.P. Guerra v. United States*, 207 F.3d 763, 767 (5th Cir.2000).  In the instant case, however, Wilcher sought sincerely and competently to end his appeal process.   This court permitted Wilcher, in accordance with his expressed wishes, to withdraw his appeals, following the directives of *Rees v. Peyton*, 384 U.S. 312, 313, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966).   Nothing has been submitted by Wilcher or his attorney which

9

would direct this court pursuant to Rule 60(b)(6) to reinstate Wilcher's habeas corpus petition and to proceed as though he never had withdrawn it.

Accordingly, this court hereby denies Wilcher's Emergency Motion To Reinstate Petition For Writ Of Habeas Corpus, To Withdraw Petitioner's Pro Se Motion, And To Reinstate Stay Of Execution in its entirety.  The court also denies Wilcher's *ore tenus* motion to stay execution and his *ore tenus* motion for a Certificate of Appealability.

SO ORDERED, this the 16th day of October, 2006.

                    s/ HENRY T. WINGATE

                    CHIEF UNITED STATES DISTRICT JUDGE

Civil Action No. 3:98-cv-236 WS